## ROCHESTER TELEPHONE CORPORATION v. UNITED STATES et al.

District Court, W. D. New York.
June 20, 1938.

T. Carl Nixon, of Rochester, N. Y. (Justin J. Doyle, of Rochester, N. Y., of counsel), for petitioner.

Hampson Gary, Gen. Counsel, James A. Kennedy, Asst. Gen. Counsel, and Elizabeth C. Smith, Asst. Counsel, all of Washington, D. C., Robert M. Cooper, Sp. Asst. to Atty. Gen., Thurman Arnold, Asst. Atty. Gen., and Wendell Berge and John J. Abt, Sp. Assts. to Atty. Gen., for Federal Communications Commission.

Before MANTON, Circuit Judge, and KNIGHT and BURKE, District Judges.

MANTON, Circuit Judge.

This suit is brought to set aside an order of the Federal Communications Commission which directs petitioner to comply with certain orders of the Commission. 47 U.S.C. A. § 402(a). The United States is made a party (§ 211 of the Judicial Code; 28 U.S. C.A. § 48). The petitioner maintains that it is not subject to such supervision because of § 2 (b) (2) of the Communications Act of 1934 (48 Stat. 1064; 47 U.S.C.A. § 152 (b) (2) which provides: "Subject to the

provisions of section 301, nothing in this chapter shall be construed to apply or to give the Commission jurisdiction with respect to * * * (2) any carrier engaged in interstate or foreign communication solely through physical connection with the facilities of another carrier not directly or indirectly controlling or controlled by, or under direct or indirect common control with, such carrier; except that sections 201 to 205 of this Act [chapter], both inclusive, shall, except as otherwise provided therein, apply to carriers described in clause (2)." By § 402(a) "the provisions of the Act of October 22, 1913 (38 Stat. 219 [sections 43 and 44 of Title 28, and sections 16 and 50 of Title 49]) relating to the enforcing or setting aside of the orders of the Interstate Commerce Commission" are applicable to suits to enforce or set aside any order of the Commission under the Communications Act.

Between July 20, 1934, and September 13, 1934, the Communications Commission promulgated general orders Nos. 1, 2, 3, 5, 6, 6a and 9 which required telephone carriers subject to its jurisdiction to report information regarding their operations and corporate structure to the Commission. Petitioner failed to comply with these orders and ultimately, after notice and a hearing, was classified by the Commission as a wire telephone carrier subject to all common carrier provisions of the Communications Act and therefore subject to all general orders of the Commission applicable to such carriers.

The questions presented are: (1) what type of influence and control Congress intended to include by the phrase "directly or indirectly * * * controlled by" as used in § 2 (b) (2) of the Act, 47 U.S.C.A. § 152 (b) (2); and (2) whether the petitioner is directly or indirectly controlled by the New York Telephone Company within the same section. Section 2(a), 47 U.S.C.A. § 152(a), makes all carriers engaged in interstate or foreign commerce by wire or radio, subject to the provisions of the act. But § 2 (b) (2) exempts petitioner from the Commission's jurisdiction if it is engaged in interstate and foreign communications solely through physical connection with the facilities of another carrier and is not directly or indirectly controlled by such other carrier. Petitioner is concededly engaged in interstate and foreign communications solely by wire through its physical connections with the facilities of the New York Telephone Company, and the latter is a car-

rier subject to the jurisdiction of the Communications Commission.

It is essential to find what meaning Congress intended by the use of the word "control" in the statute. The report of the Committees of Congress may be consulted to find the Congressional intent. Woodward v. De Graffenried, 238 U.S. 284, 35 S.Ct. 764, 59 L.Ed. 1310; Lapina v. Williams, 232 U.S. 78, 34 S.Ct. 196, 58 L.Ed. 515. From these reports it is clearly indicated that Congress intended "control" as used in the statute to be broadly construed. In House Report 1850, 73 Cong., Second Session, pp. 4, 5, it is stated: "No attempt is made to define 'control', since it is difficult to do this without limiting the meaning of the term in an unfortunate manner. Where reference is made to control the intention is to include actual control as well as what has been called legally enforceable control." Congress has recognized the fact that there are many ways in which actual control may be exerted, such as stock ownership, leasing, contract and agency. Congress also realized that control may be exercised "through ownership of a small percentage of the voting stock of the corporation, either by the ownership of such stock alone or through such ownership in combination with other factors." Broadly used, "control" may embrace every form of control, actual or legal, direct or indirect, negative or affirmative. And in Natural Gas Co. v. Slattery, 302 U.S. 300, 58 S.Ct. 199, 82 L. Ed. —, the court said (pages 307, 308, 58 S.Ct. page 203): "We have not said, nor do we perceive any ground for saying, that the Constitution requires such an inquiry to be limited to those cases where common control of the two corporations is secured through ownership of a majority of their voting stock. We are not unaware that, * * * there are other methods of control of a corporation than through such ownership. Common management of corporations through officers or directors, or common ownership of a substantial amount, though less than a majority of their stock, gives such indication of unified control as to call for close scrutiny of a contract between them whenever the reasonableness of its terms is the subject of inquiry."

Since provisos and exceptions in statutes are intended to restrain or except that which otherwise would be within the scope of the general language, they must be strictly construed and limited to objects fairly within their terms. The petitioner must bring itself within this exception. Schlemmer v. Buffalo, Rochester & P. R. R. Co., 205 U.S. 1, 27 S.Ct. 407, 51 L.Ed. 681; Ross v. Duval, 13 Pet. 45, 10 L.Ed. 51.

Usually the management of corporate affairs is vested in the stockholders and where a majority of the voting stock is owned by another corporation, the control of the first company resides there. It may not be disputed that a minority stockholder can exercise strong influence and even control over the affairs of a corporation. See United States v. Union Pac. Ry. Co., 226 U.S. 61, 33 S.Ct. 53, 57 L.Ed. 124.

The petitioner was incorporated February 14, 1920 for the purpose of acquiring and consolidating the properties of the New York Telephone Company in the Rochester territory and the Rochester Telephone Company. The petitioner took over the properties of both at an appraised valuation, approved by the New York Public Service Commission, in accordance with the provision of a reorganization agreement. The Rochester Telephone Company's valuation was fixed at $1,600,000, subject to a bonded indebtedness of $1,058,000, which amount was paid with bonds issued by the petitioner for that purpose; these bonds have been retired. The properties of the New York Telephone Company in the Rochester territory were valued at $4,814,000 and were paid for by petitioner with its present second preferred stock. The petitioner was authorized to capitalize its investment at $7,000,000 and to issue 70,000 shares of stock at a par value of $100. per share consisting of 1,000 shares of common (full voting) stock and 69,000 shares of 5% cumulative preferred stock. It began its operations August 1, 1921. In March 1926, it was authorized to increase its capitalization to $12,000,000 and to issue 50,000 shares of 6 to 6½% cumulative preferred stock with a par value of $100. This was classified as first preferred stock and the original preferred stock was reclassified as second preferred stock. Of the 120,000 shares of capital stock thus authorized, only 71,966 shares with a total par value of $7,196,000 have been issued and are now outstanding. 665 shares or 66.5% of the common stock which carries full voting rights is deposited in a voting trust in accordance with the preorganization agreement with the New York Telephone Company and Fred C. Goodwin owns all the voting trust certificates issued on the deposited shares; 335 shares or 33.5% of the common stock

and 48,140 shares (all) of the second preferred stock are now owned by the New York Telephone Company, and 22,826 shares of the first preferred stock and bonds in the amount of $6,238,000 are outstanding and in the hands of the public. Thus 67% of all issued and outstanding capital stock of the petitioner is owned by the New York Telephone Company. While the common stock is designated as "voting stock", its majority voting power is limited by the certificate of incorporation providing that in all major matters other than those that may be classified as routine business and including such matters as increase or reduction of capital stock, the issuance of preferred stock other than that provided in the certificate and the alteration or amendment of the certificate will not become effective unless concurred in by an affirmative vote of 80% of the outstanding common stock. It is provided that the second preferred stock shall have "equal voting power" with the common stock but cannot vote for the election of directors or the adoption or amendment of by-laws, unless or until there is a default in the payment of dividends on the second preferred, in which event it shall have full voting power. The publicly owned first preferred stock neither has nor can acquire any voting rights or privileges. The second preferred stock is entitled to priority over common stock to the full extent of its par value upon the distribution of assets of the corporation or in the event of insolvency or dissolution. Both the common and second preferred stock are limited to 5% dividends but share equally in any extra dividends up to 3% and in case of dissolution or sale share equally in the assets remaining after the payment to all stockholders of the full amount of their stock at par value. The second preferred stock is not redeemable but the first preferred stock may be redeemed at any time on any dividend payment date at 10% above par plus unpaid accumulated dividends.

The annual dividend requirement on the outstanding stock amounts to $389,069, and the petitioner has a surplus of approximately $1,298,490, from which it appears that there is little chance of a default for a period of years. It is further argued that it is not likely there will be any occasion requiring the 80% vote or consent of all common stockholders for the reason that approximately $6,000,000 of the authorized preferred stock and bonds have not been issued and these may be issued by the petitioner at any time without further authority or consent of the New York Telephone Company. But it is admitted that occasion has arisen in the past requiring an 80% vote. It is argued that even though one-third of the common stock and all of the second preferred stock is held by the New York Telephone Company, it is not vested with power to control because none of the voting trustees who control two-thirds of the common stock nor the New York Telephone Company can at any time exercise an 80% vote of the common stock without the aid or consent of the other. From this it is argued that such power and control as the New York Telephone Company may possess is negative or a veto power which is equally possessed by both parties and enables either to block the other on any major proposal which might arise and consequently the New York Telephone Company has no such control over the petitioner as is contemplated within § 2 (b) (2) of the Communications Act, 47 U.S.C.A. § 152 (b) (2). Such argument, however, does not advance the petitioner.

The pre-incorporation agreement, under which the consolidation became effective, provided that three persons, Fuller, McCanne and Zoller, were to be employed at a fixed compensation to render services essential to the consolidation of the properties which included using their best efforts to effect the sale and conveyance of all the properties of the old Rochester Telephone Company to the new Rochester Telephone Corporation (petitioner); bringing about the incorporation of the petitioner; securing the approval of the Public Service Commission of New York to schedules of rates as specified in the agreement; purchasing 665 shares of common stock of a total of 1,000 authorized shares; and presenting to the New York Telephone Company satisfactory proof of the performance of these services in return for which the company would pay $70,000 upon the express stipulation, however, that $66,500 of this amount was to be used by the three above named individuals in the purchase of the 665 shares of common stock. These 665 shares of common eventually came into the possession and control of Goodwin and although he is the owner of the voting trust certificates covering all the common stock of the petitioner except that owned by the New York Telephone Company, the stock is still deposited under a trust agreement which expired August 1, 1936 but which it is said will be

renewed for another ten year period. It was the New York Telephone Company which imposed the condition of a voting trust agreement in the preorganization agreement.

Five of the original nine incorporators were prominent citizens of Rochester but none received any stock. Of the fifteen members of the Board of Directors, ten including Goodwin, are prominent citizens of Rochester and no one except he has any voting stock, and they serve on the Board of Directors merely as a matter of civic interest.

The policies of the petitioner are governed by the board of directors and the executive committee consisting of five directors, three of whom are named by the voting trustees and two by the New York Telephone Company. Provision is made in the articles of incorporation for cumulative voting in the election of directors and executive committee members to insure the New York Telephone Company representation roughly proportionate to its holdings of common.

The petitioner acquired all the properties, both real and personal, of both the old companies located in the prescribed territory including exchanges, connecting lines and equipment, except the toll switchboards and through toll lines owned by the New York Telephone Company. It owns and operates switchboards for both local and toll service to all points of operation within its territory except in the City of Rochester where it has no toll board although it has seven otherwise completely equipped switchboard exchanges. Petitioner having no lines crossing state boundaries, uses the facilities of the New York Telephone Company in its extraterritorial and interstate traffic. These facilities are arranged and paid for on a per message basis.

The Commission could find, as it did, that through stock ownership and as a dominant financial factor in the petitioner's organization taken together with the above contractural arrangements, the New York Telephone Company has power to control the petitioner. The plan providing for the organization and incorporation, election of directors and placing the common stock in a voting trust gave control directly and indirectly to the New York Telephone Company.

We are obliged to accord proper weight to the findings of the Commission which conducted hearings and heard argument on the questions involved. St. Joseph Stock Yards Co. v. United States, 298 U.S. 38, 56 S.Ct. 720, 80 L.Ed. 1033; Manufacturers' Ry. Co. v. United States, 246 U.S. 457, 38 S.Ct. 383, 62 L.Ed. 831. The determination of the Commission under the proof here is binding upon us. Interstate Commerce Comm. v. Illinois Central Ry. Co., 215 U.S. 452, 30 S.Ct. 155, 54 L.Ed. 280; Interstate Commerce Comm. v. Union Pac. Ry. Co., 222 U.S. 541, 32 S.Ct. 108, 56 L.Ed. 308; Florida v. United States, 292 U.S. 1, 54 S. Ct. 603, 78 L.Ed. 1077.

The petitioner does not come within the exception of the statute as set forth in § 2 (b) (2), and since counsel have stipulated that a final decree may be entered upon our determination, judgment will be entered for the respondents.