Orval V. NEMITZ, Plaintiff,

v.

Walter F. CUNNY and Margaret O. Cunny, Defendants.

No. 62 C 1462.

United States District Court
N. D. Illinois, E. D.

June 14, 1963.

Alan J. Altheimer, Lionel G. Gross, David V. Kahn, Altheimer, Gray, Naiburg & Lawton, Chicago, Ill., for plaintiff.

Sears, Streit & Dreyer, Chicago, Ill., for defendants.

PARSONS, District Judge.

Some time prior to April 30, 1958, the defendant Walter F. Cunny negotiated with plaintiff for the purchase of plaintiff's 893 shares in Falls Products Incorporated, and, in so doing, made a number of telephone calls to the plaintiff, the transmission and receipt of which all took place wholly within the State of Illinois.

On or about April 30, 1958, the sale was consummated, and the defendant Walter F. Cunny thereafter held the certificate representing the shares so purchased and sold until November 30, 1960,

at which time he caused them to be transferred on the books of the corporation and to be issued to the defendant Margaret O. Cunny, his wife.

The complaint alleges that all of the parties herein are directors and shareholders in Falls Products Incorporated. In Count I thereof, the defendant Walter F. Cunny is charged with devices, schemes, and artifices to defraud through the use of an instrumentality of interstate commerce, and with acts or practices which operated as a fraud or deceit upon the plaintiff. This count alleges violations of Rule 10b–5 (17 C.F.R. 240.10 b5) adopted by the Securities and Exchange Commission pursuant to Section 10(b) of the Securities and Exchange Act of 1934 (15 U.S.C.A. § 78j(b)).

Section 78j provides in part:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

And Rule 10b-5 provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange, (1) to employ any device, scheme or artifice to defraud, (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not mislead-

ing, or (3) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

Count II of the complaint is a common law action alleging both actual fraud and a breach of a fiduciary relationship resulting in constructive fraud in connection with the same purchase of shares of stock from plaintiff by the defendant Walter F. Cunny.

Both defendants have filed separate motions to dismiss the complaint.

In support of the motions, insofar as they are directed to Count I of the complaint, defendants urge that Section 78j(b) and Rule 10b–5 have no application to the alleged facts of this case because:

(1) The transaction involved herein is solely an intrastate transaction and in regard to the stock of a closed corporation, incorporated in Illinois, and not dealt in on any stock exchange;

(2) No means or instrumentality of interstate commerce or of the mails or any communication device was used in the purchase or sale of the stock complained of;

(3) If said statute is construed to apply to an intrastate transaction, said statute is unconstitutional in that Congress would have thereby exceeded its legislative jurisdiction under Article I, Section 8, of the United States Constitution;

(4) That the purpose of the statute and the abuse sought to be corrected by the passage thereof is to prevent a person who, through his status as an officer or director of a corporation, is acquainted with the corporate affairs from misleading or deceiving one who does not possess such knowledge; and

(5) That at the time of the transaction complained of, and for a long time prior thereto, plaintiff was a director and the vice-president of the corporation in question and his knowledge of the status and affairs of the corporation were at least equal to the knowledge of the defendants.

It is clear that the use of a telephone constitutes the use of an instrumentality of interstate commerce, unless of course the telephone is merely a part of a private or intra-office hookup. Fratt v. Robinson, 9 Cir., 203 F.2d 627, 37 A.L.R.2d 636; Matheson v. Armbrust, 9 Cir., 284 F.2d 670; Primrose v. Western Union Telegraph Company, 154 U.S. 1, 14 S.Ct. 1098, 38 L.Ed. 883; Western Union Telegraph Company v. Lenroot, 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414; Western Union Telegraph Company v. James, 162 U.S. 650; Western Union Telegraph Company v. Texas, 105 U.S. 460, 26 L.Ed. 1067.

Thus Section 78j could just as well read, for the purposes of the case at bar: "It shall be unlawful for the defendants herein, indirectly, by the use of the telephone on an interstate hookup, to use or employ, in connection with the purchase of any security, any manipulative or deceptive device or contrivance in contravention of Rule X–10B–5." The word "indirectly" is quite broad and pervasive and thus the alleged acts of at least one of the defendants would cause him to fall within Section 78j. Even though misrepresentations or words of fraud were not uttered over the telephone it is sufficient if the telephone is used "indirectly" to cause a meeting to be held for the purpose of effectuating a fraud in order for the provisions of Section 78j to come into play. Northern Trust Company v. Essaness Theatres Corporation, D.C., 103 F.Supp. 954; Hooper v. Mountain States Securities Corporation, 5 Cir., 282 F.2d 195; Matheson v. Armbrust, 9 Cir., 284 F.2d 670. These jurisdictional elements must of course be proved at the trial of this cause.

Furthermore, under a clear reading of the statute, it is certain that Section 78j would apply to the facts of this case even though there are involved an *intrastate* transaction and a closed corporation, which is incorporated in the State

of Illinois, and the stock of which is not dealt with on any exchange. Matheson v. Armbrust, 9 Cir., 284 F.2d 670; Northern Trust Co. v. Essaness Theatres Corp., D.C., 103 F.Supp. 954; Hooper v. Mountain States Securities Corp., 5 Cir., 282 F.2d 195; Fratt v. Robinson, 9 Cir., 203 F.2d 627; Robinson v. Difford, D.C., 92 F.Supp. 145; Kardon v. National Gypsum Co., D.C., 73 F.Supp. 798; Ellis v. Carter, 9 Cir., 291 F.2d 270.

But defendants raise a problem which goes beyond the clear applicability of the statute. It is contended that if the statute is construed to apply to the facts of this case, it is unconstitutional in that Congress to that extent would have exceeded its legislative jurisdiction under Article I, Section 8, of the United States Constitution. The problem is especially difficult of solution by virtue of the fact that both the transmission and reception of the three phone calls which allegedly culminated in the fraudulent negotiations all took place entirely within the State of Illinois. It is exceedingly difficult to imagine how interstate commerce was prejudiced, or obstructed, or burdened, or discriminated against by these intrastate telephone calls. And even if these calls had been made across state lines, it would, I think, be just as difficult to make the very same determination, since the same facilities would have been used in practically the very same manner.

■ Had the Courts over the years adhered to the principle that the commerce power could be used only as a device for accomplishing *economic* goals, I would be compelled to dismiss Count I of the complaint forthwith. But a series of cases between 1903 and World War I clearly established the principle that the commerce power could be used as a device for accomplishing purely *social* goals. See: Champion v. Ames, 188 U.S. 321, 23 S.Ct. 321, 47 L.Ed. 492; Hipolite Egg Co. v. United States, 220 U.S. 45, 31 S.Ct. 364, 55 L.Ed. 364; Hoke v. United States, 227 U.S. 308, 33 S.Ct. 281, 57 L.Ed. 523. Although after 1918 the pattern is somewhat confused, the broad application of the commerce clause nevertheless continued. Stafford v. Wallace, 258 U.S. 495, 42 S.Ct. 397, 66 L.Ed. 735; Brooks v. United States, 267 U.S. 432, 45 S.Ct. 345, 69 L.Ed. 699.

■■ Thus Congress may regulate interstate commerce to the extent of forbidding the use of such commerce or an instrumentality thereof as an agent to promote immorality or dishonesty. While the authority of the Federal Government over interstate commerce may not be pushed to such an extreme as to destroy the distinction which the commerce clause itself establishes between commerce among the several states and the internal concerns of the state, nevertheless, in the exercise of its plenary authority to protect interstate commerce and the facilities thereof, Congress may prohibit any act which makes it a vehicle for fraud or deception.

■ Thus, even though Congress may not be able to forbid the fraud or deception standing alone, it can forbid the use of an instrumentality of interstate commerce in furtherance of a scheme that it regards as contrary to public policy. Bogy v. United States, 6 Cir., 96 F.2d 734.

■ And, as plaintiff notes, the Courts have on many occasions held that where activities may be *intrastate* in character when separately considered, if they have such a close relation to interstate commerce that their control is essential or appropriate to protect that commerce from uses inimical to the welfare and public policy of the country as a whole, Congress cannot be denied the power to exercise that control. In addition to the cases previously cited, see: N. L. R. B. v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893; Houston E. & W. Texas Railway Co. v. United States, 234 U.S. 342, 34 S.Ct. 833, 58 L.Ed. 1341; Rochester Telephone Corp. v. United States, D.C., 23 F.Supp. 634; Benanti v. United States, 355 U.S. 96, 78 S.Ct. 155, 2 L.Ed.2d 126; Bethlehem Steel Co. v. New York State Labor Relations Board, 330 U.S. 767, 67 S.Ct. 1026, 91 L.Ed. 1234; North Ameri-

can Co. v. S. E. C., 327 U.S. 686, 66 S.Ct. 785, 90 L.Ed. 945; Mulford v. Smith, 307 U.S. 38, 59 S.Ct. 648, 83 L.Ed. 1092; United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609; Wickard v. Filbrun, 317 U.S. 111, 63 S.Ct. 82, 87 L.Ed. 122. Since Congress has the authority to regulate instrumentalities of interstate commerce, it would seem to follow that Congress can regulate the operation and use of that instrumentality, even where the use involves acts solely *intrastate* in character. And so it would appear that Congress has the constitutional authority to prevent the use of an instrumentality of interstate commerce as an agency to promote dishonesty or fraud. United States v. Handler, 2 Cir., 142 F.2d 351.

Admittedly, the construction I have placed upon Section 78j, under the facts of this case, goes beyond what any other case has held, but it is the Court's opinion that this is the construction that will ultimately prevail, wisely or otherwise. During the progress of this litigation, it may very well develop that the transaction complained of is entirely local and that the telephone calls are merely incidental to the entire transaction and do not constitute an integral part of the alleged scheme to defraud. But this is something that cannot be decided upon a mere reading of the pleadings. And while the allegations of the complaint could be more specific in these matters, I find it sufficient with respect hereto.

■ Defendants also allege that since plaintiff was a director and the vice-president of the corporation in question, his knowledge of the status and affairs of the corporation must have been at least equal to the knowledge of the defendants. This, of course, poses an issue of fact which must await the trial of this cause. Defendants' argument is indeed thought-provoking and it certainly indicates an area where plaintiff may meet many obstacles to the proof of his charges. But the allegations of the complaint are sufficient to raise the question of whether or not the defendant Walter F. Cunny actively engaged in a scheme to conceal the affairs of the corporation. And having raised this question, it matters little that the plaintiff was a director and officer of the corporation though, as I have indicated, because of this the burden may be more difficult for plaintiff to bear. Cf., Broffe v. Horton, 2 Cir., 172 F.2d 489.

■ Defendants also raise numerous additional objections which go to the form and substance of Counts I and II. I shall not burden the record by listing each of these objections, but I shall make the following observations. Deficiencies in the complaint are more properly rectified through the filing of an amended complaint and not through the use of affidavits. Otherwise, defendants could not answer the allegations except by way of counter-affidavits. Secondly, different causes of action based on different legal theories, even though based on essentially identical facts, should be alleged in separate counts. Thirdly, Rule 9 of the Federal Rules of Civil Procedure contemplates specificity when alleging fraud. While I find that the complaint, taken as a whole, at least in substance sufficiently alleges common law fraud, and a violation of Section 78j, if the affidavits are considered, nevertheless, a motion for a more definite statement would certainly lie. It therefore is suggested that most of defendants' objections could be obviated if plaintiff would simply file an amended complaint, taking into account defendants' observations.

■ As to the defendant Margaret O. Cunny, however, I fail to find any claim stated upon which relief can be granted. Nor do I find any basis for keeping her in this suit as a necessary or proper party defendant. All that is alleged is that she received the stock purchased by her husband. Rules 19 and 20 do not contemplate her joinder for this reason alone. Accordingly, the motion of Margaret O. Cunny to dismiss the complaint as to her is allowed.

The motion of Walter F. Cunny to dismiss will be entered and continued to June 26, 1963, during which time plaintiff may file an amended complaint, if he so desires.