**Alvin ROSEN**

v.

**ALBERN COLOR RESEARCH, INC., et al.**

**Civ. A. No. 28087.**

United States District Court
E. D. Pennsylvania.

June 20, 1963.

474

Blank, Rudenko, Klaus & Rome, Henry J. Morgan, Philadelphia, Pa., for plaintiff.

George J. Ivins, Philadelphia, Pa., for defendants Albern, Love and Mandelbaum.

Edward Unterberger, Philadelphia, Pa., for Joyce Marks.

KRAFT, District Judge.

This case poses an interesting and important question, and apparently one of first impression.

Plaintiff brought his action under the provisions of the Securities Exchange Act of 1934, to recover damages claimed as the result of alleged misrepresentations and failures to disclose on the part of defendants, or some of them, in the sale of certain securities by the plaintiff. Presently before us are defendants' motions to dismiss the complaint for lack of jurisdiction.

It may be noted at the outset that defendants have erred in a matter of procedure. Paragraph 1 of the amended complaint alleges:

"The Court has juridiction of this action by virtue of the provisions of Sections 10(b), 27 and 29(b) of the Securities Exchange Act of 1934, and Rule X-10B-5 of the Securities Exchange Commission."

■ The allegation alone is sufficient to empower this Court to assume jurisdiction over the case. Defendants' real contention is that the complaint fails to state a cause of action under the statute. The situation here is essentially identical with that presented in Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959), and the Court's remarks there are equally pertinent here (p. 359 of 358 U.S., p. 473 of 79 S.Ct.):

"The District Court dismissed petitioner's Jones Act claim for lack of jurisdiction. 'As frequently happens where jurisdiction depends on subject matter, the question whether jurisdiction exists has been confused with the question whether the complaint states a cause of action.' Montana-Dakota Utilities Co. v. Northwestern Public Service Co., 341 U.S. 246, 249 [71 S.Ct. 692, 95 L.Ed. 912]. Petitioner asserts a substantial claim that the Jones Act affords him a right of recovery for the negligence of his employer. Such assertion alone is sufficient to empower the District Court to assume jurisdiction over the case and determine whether, in fact, the Act does provide the claimed rights. 'A cause of action under our law was asserted here, and the court had power to determine whether it was or was not well founded in law and in fact.' Lauritzen v. Larsen, 345 U.S. 571, 575 [73 S.Ct. 921, 924, 97 L.Ed. 1254]."

■ However, since the facts are undisputed, and the case presents only a question of law, we shall treat the motion as one for summary judgment.

Section 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b) provides:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange— * * *

"(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors."

It is unnecessary, for present purposes, to consider the implementing Rule X-10B-5, of the Securities Exchange Commission.

Briefly stated, the transactions in question were effected through telephone conversations between plaintiff, speaking from a telephone (Market 7-8032) located at 1011 Chestnut Street, Philadelphia, Pennsylvania, and Samuel Chavenson, speaking from a telephone (Evergreen 6-7400) located at 3316 Spring Garden Street, in the same City. Each call was transmitted from the number calling to that number's exchange, thence over a "direct trunk" to the exchange of the number called, and thence to the number called. All the wires carrying the calls were located within Philadelphia. The telephone lines between Market 7-8032 and the Market Exchange, and between Evergreen 6-7400 and the Evergreen Exchange, were susceptible to use and were, on occasion, used for both intrastate and interstate calls.

■ The precise question, then, is whether, under these agreed facts, the transactions here involved were effected "by the use of any means or instrumentality of interstate commerce", within the meaning of the statute. We think they were not.

476

■ The telephone is, of course, an instrument of interstate commerce. 15 C.J.S., Commerce § 41. It is as well an instrument of intrastate commerce. "The question as to whether a particular instrumentality is one of interstate commerce is to be determined by the use to which it is put, rather than its nature." Id., § 34. In the phrase of Mr. Justice Holmes, dealing in like context with a locomotive, "Its character as an instrument of commerce depended on its employment at the time not upon remote probabilities or upon accidental later events." Minneapolis & St. Louis R. R. Co. v. Winters, 242 U.S. 353, 357, 37 S. Ct. 170, 172, 61 L.Ed. 358 (1917).

Since the telephone was concededly employed here to effect a purely local transaction, and not in interstate commerce, it was not an instrumentality of interstate commerce. Neither the fact that the telephone was susceptible to use for interstate communication, nor the fact that the wires carrying the conversations were, in part, used for interstate calls on other occasions has, in our view, any controlling significance.

As we have indicated, there is a singular dearth of authority on the point. However, in Hooper v. Mountain States Securities Corporation, 282 F.2d 195 (5th Cir. 1960), the Court, without discussion of the point, spoke of the right of action arising "where facilities of the mail or interstate communications are used" (p. 201 of 282 F.2d).

Our conclusion is fortified by consideration of the language of § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), which provides in relevant part:

"It shall be unlawful for any person in the offer or sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly— * * *."

We agree with Judge La Buy that, "The purpose of Section 17(a) of the 1933 Act and Section 10(b) of the 1934 Act are similar and the phraseology employed is substantially similar." Northern Trust Co. v. Essaness Theatres Corp., D.C., 103 F.Supp. 954, 964 (N.D.Ill.E.D. 1952). The plain meaning of the language of § 17(a) is the use *in interstate commerce* of the particular means or instrument of transportation or communication.

While § 10(b) of the Securities Exchange Act is part of a comprehensive regulatory scheme, it partakes of the same general nature as the crime denounced in 18 U.S.C. § 1343:

"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be * * *."

■ Here, again, it is *interstate* communication which is the essence of the offense. We see no reason to attribute to Congress any different purpose or intent in the enactment of § 10(b) of the Securities Exchange Act.

Plaintiff in his careful brief emphasizes the power of Congress to regulate intrastate activities when it becomes necessary for the protection of interstate commerce, citing Lipinski v. United States, 251 F.2d 53 (10th Cir. 1958). We have no quarrel with that principle. The fact remains, however, that Congress, in the enactment of 10(b), did not choose to exercise that power, except in those instances falling within its terms. So far as we perceive, Congress did not undertake to regulate those transactions effected by direct person-to-person contact and negotiation. We are not here concerned with abstract considerations of power, but with actual manifestations of Congressional purpose and intent.

For the reasons stated, we make the following

[redacted]

ORDER

NOW, June 20th, 1963, it is ordered and decreed that defendants' motions for summary judgment be, and they are, granted, and judgment is entered for the defendants.