AQUIONICS ACCEPTANCE CORPORA-
TION, Plaintiff-Appellant,

v.

Richard KOLLAR et al., Defendants-
Appellees.

No. 74–1236.

United States Court of Appeals,
Sixth Circuit.

Argued June 11, 1974.

Decided Oct. 9, 1974.

James R. Brandon, Canton, Ohio, for plaintiff-appellant; Jeffery E. Zink, Amerman, Burt & Jones, Canton, Ohio, on brief.

Owen C. Neff, Cleveland, Ohio, for defendants-appellees; Gerald E. Johnson, James P. Oliver, Johnson & Umstead, Cleveland, Ohio, on brief.

Before PECK and LIVELY, Circuit Judges; and CECIL, Senior Circuit Judge.

LIVELY, Circuit Judge.

Two questions are presented in this appeal from a jury verdict in favor of the defendants. The plaintiff sued for damages suffered by it in the purchase of stock of the defendant Statler Engine Corporation in reliance upon allegedly false and misleading statements made by various defendants. The corporate plaintiff caused the stock in Statler to be issued in its name as an investment medium for its shareholders. Both Aquionics and Statler are Ohio corporations and the negotiations which led up to the purchase of Statler stock by Aquionics took place within that state. In addition to a number of face-to-face meetings there were intrastate telephone calls between officers and directors of the two corporations. Several months after plaintiff purchased and paid for the stock, Statler caused a stock certificate to be sent through United States mails to Florida where its secretary was then living for his signature. This certificate was returned by mail from Florida to Ohio and delivered to plaintiff.

This action was instituted pursuant to Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5. Section 10(b) (15 U.S.C. § 78j(b)) provides as follows:

§ 78j. Manipulative and deceptive devices

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b–5 (17 C.F.R. § 240.10b–5) provides that—

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) To employ any device, scheme, or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

The district courts of the United States have exclusive jurisdiction of all actions brought to enforce liabilities and duties created by the 1934 Act. 15 U.S.C. § 78aa.

The factual basis of the plaintiff's claim is that the individual defendants represented to various officers and directors of the plaintiff that Statler Engine Corporation had developed a rotary engine that was superior to the Wankel engine. It was alleged that the defendants represented that a 100-horsepower

version of their engine was working and that they had orders from at least one public utility company and interest from another. It was further claimed that the defendants represented that Statler held a patent on a "tip seal" which corrected a major weakness of the Wankel engine. At the time of the negotiations, Aquionics had a franchise for a one-man golf cart and was interested in developing a commercial product of this type. It is asserted that the defendant Kollar gave assurances to the president of Aquionics that there would be no problem in reducing the horsepower of the Statler rotary engine so that it could be utilized on a golf cart and that this could easily be done within 150 days. A portion of this conversation took place during an airplane trip from Ohio to Florida.

■ The appellees take the position that it is unnecessary for this court to consider the assignments of error made by appellant because there was no evidence of a violation of Section 10(b) or Rule 10b–5 and that appellees were entitled to a directed verdict. We have examined those portions of the transcript which are included in the record on appeal and conclude that the district court properly submitted this case to the jury. The testimony of Jack Sinn, the president of Aquionics, although contradicted by the testimony of various witnesses for the defendant, is clearly sufficient to require submission to the jury. By a motion to dismiss filed in this court, the appellees urge us to apply the "two issue" rule and affirm the judgment. This rule has no application to a trial in a federal court. Williams v. Powers, 135 F.2d 153, 156 (6th Cir. 1943).

Appellant contends that the district court incorrectly charged the jury on the meaning of interstate commerce as used in the statute and rule. The portion of the charge to which plaintiff objected at the time and upon which it bases its claim of error is as follows:

> THE COURT: The term "interstate commerce" means trade, commerce, transportation, or communica-

tion among the several states, or between any foreign country and any state, or between any state and any place or ship outside thereof.

Now, the term "interstate commerce" is compared with the term "intrastate commerce," which means trade, commerce, transportation or communications wholly within the external boundaries of a single one of the United States. In other words, commerce within the limits of one state.

The Court charges you as a matter of law that the mails, the telephone, the interstate highway system, and similar methods of communication and travel are all instrumentalities of both interstate and intrastate commerce.

Thus, the issue which you must determine from the evidence is whether a particular instrumentality is one of interstate commerce, and to make that determination, you must consider the use to which any given instrumentality was put or the manner in which it was used rather than its nature.

To put it another way, you must determine the character of a method of communication or travel as an instrumentality of commerce, and this depends upon its employment or use at the time and not upon remote probabilities.

Thus, if a particular method of communication or transportation was employed to effect a purely local transaction wholly within the external boundaries of Ohio, then the instrumentality was not one of interstate commerce.

Conversely, if it was used as among several states to effect a transaction, then in that event, it was an instrumentality of interstate commerce.

After the jury had begun deliberations it requested a clarification of the charge by directing the following question to the court:

> We would like a clarification on the interstate portion of the charge to the jury. As we understand the charge,

they, Statler Engine Corporation, were accused of fraud in the sale of the stock, violating one law, and then there is a second charge that this alleged fraud took place in part through the mails and so forth, violating a second law. Is that correct?

In responding to this question the court repeated a portion of its previous charge including the statement that—

The Court charges you as a matter of law that the mails, telephone, the interstate highway system, and similar methods of communication and travel are all instrumentalities of both interstate and intrastate commerce.

\* \* \* \* \* \*

Thus,[6] if a particular method of communication or transportation was employed to effect a purely local transaction wholly within the external boundaries of Ohio, then the instrumentality was not one of interstate commerce.

■ We believe the district court committed error in this instruction. The appellees suggest that if this was error, it was harmless. This is obviously not true, since the jury was sufficiently concerned with this matter to request clarification from the court. The district court relied primarily upon the holding in Rosen v. Albern Color Research, Inc., 218 F.Supp. 473 (E.D. Penn.1963). We are persuaded that the United States District Court for the Northern District of Ohio reached the proper conclusion on this issue in Lennerth v. Mendenhall, 234 F.Supp. 59 (1964). In that action for rescission of the sale of securities on account of fraud the court held that the use of a telephone to arrange a meeting, even though the call both originated from and was received in the State of Ohio, met the requirements of Section 10(b). The court held, "It is the character of the instrument used rather than the nature of the call, which determines." *Id.* at 63. In Nemitz v. Cunny, 221 F.Supp. 571 (N.D.Ill.1963), it was held that even where no misrepresentations were made

over the telephone its use in arranging a meeting which furthered the fraudulent scheme was the indirect use of an instrumentality of interstate commerce within the meaning of Rule 10b–5. The court also held that the 1934 Act applies to a case involving clearly intrastate transactions in the stock of a closed corporation incorporated in the state where the fraudulent transactions took place.

■ The Eighth Circuit reached the same conclusion in Myzel v. Fields, 386 F.2d 718 (1967), cert. denied, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968), in which Nemitz v. Cunny, *supra*, was cited. On the other hand, in a brief per curiam opinion containing no statement of facts the Ninth Circuit found that there was "no use of an 'instrumentality of interstate commerce' within the contemplation of the statute by reason of two local telephone calls to the companies' counsel who was also an assistant secretary." Burke v. Triple A Machine Shop, Inc., 438 F.2d 978, 979 (1971). It is significant that both the statute and the rule speak in terms of an "instrumentality *of* interstate commerce" (emphasis added) rather than an instrumentality *in* interstate commerce. It is settled that Congress may regulate intrastate activities which have an appreciable effect on interstate commerce. United States v. Wrightwood Dairy Company, 315 U.S. 110, 62 S.Ct. 523, 86 L.Ed. 726 (1942); United States v. Darby, 312 U.S. 100, 61 S.Ct. 451, 85 L.Ed. 609 (1941); Lloyd v. United Liquors Corp., 203 F.2d 789, 796–797 (6th Cir. 1953). Thus, our interpretation of congressional intent in enacting Section 10(b) is not vulnerable to the claim of the appellees that regulation of such activities would exceed the power of Congress under the Commerce Clause.

■ Although discussion by the parties is directed exclusively to the intrastate telephone calls, we note that the mails were used to obtain a properly signed stock certificate for delivery to the plaintiff. In Ellis v. Carter, 291 F. 2d 270 (9th Cir. 1961), it was held that interstate transportation of a stock cer-

tificate some months after a sale was for the purpose of consummating the sale and was a sufficient basis for federal court jurisdiction under Section 10(b) and Rule 10b–5. A similar holding is found in Myzel v. Fields, *supra*, 386 F.2d at 728.

The second ground for reversal urged by appellants relates to the trial court's rejection of tendered evidence that one Chester Dudek made misrepresentations concerning the Statler rotary engine to another group of persons some months after the Aquionics purchase and that they were similar to misrepresentations allegedly made earlier to the Aquionics principals. The purpose of this evidence was to show that there was a continuing fraud. However, in the proffer it was stated that Dudek was a business broker who was "brought in" by some of the defendants. There was no proffer of any evidence that Dudek was an agent of the defendants with authority to speak for them or bind them in any way. The district court correctly held that such evidence was inadmissible.

The judgment of the district court is reversed, and the case remanded for a new trial.