**Milton E. DUPUY, Plaintiff-Appellant,**

v.

**Clarence O. DUPUY, Jr., Defendant-Appellee.**

No. 74–2170.

United States Court of Appeals, Fifth Circuit.

April 16, 1975.

Rehearing Denied May 14, 1975.

C. Ellis Henican, Jr., Carl W. Cleveland, New Orleans, La., for plaintiff-appellant.

Milton E. Brener, New Orleans, La., for defendant-appellee.

Before DYER, MORGAN and GEE, Circuit Judges.

DYER, Circuit Judge:

This appeal presents a narrow question of law—Does the making of *intrastate* telephone calls satisfy the jurisdictional requirement of "use of any means or instrumentality of interstate commerce" found in § 10 of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78j, and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. 240.10b–5. The district court held that it did not, and granted the defendant's motion for summary judgment on a complaint which alleged intrastate calls as the only basis for federal jurisdiction. We reverse and remand for further proceedings.

Plaintiff Milton Dupuy [Milton] and defendant Clarence Dupuy [Clarence] are brothers living in the same apartment complex in New Orleans, Louisiana. Together with their mother, they had engaged in a number of joint commercial ventures, including in 1971 the formation of the Lori Corporation for the purpose of building, owning, and operating a hotel in the French Quarter of New Orleans. Initially, each brother owned 47% of the Lori Corporation shares, with their mother owning the remaining 6%. However, Milton's subsequent illness necessitated both his withdrawal from active participation in the management of the corporation and, ultimately, the sale of his shares to Clarence.

The gist of Milton's lawsuit, which is grounded both on a Rule 10b–5 violation and a pendent fraud claim under state law, is that during the negotiations for the sale of his shares, Clarence misrepresented certain material facts and concealed others in order to induce Milton to part with his interest for only a small fraction of its true value.[1] For example, he alleged that Clarence told him the hotel project was stalled when in fact it was not, and also that he failed to disclose that the corporation had entered into a partnership agreement whereby its chief asset, the ground lease for the hotel site, had been assigned to the partnership at a valuation of $1,000,000.

As a basis of federal jurisdiction, Milton further alleged that the sale negotiations had in large measure been conducted through intrastate telephone conversations between his brother and himself. Clarence, while denying that such conversations occurred, moved for summary judgment on the ground that, even if held, intrastate telephone conversations were legally insufficient to confer federal jurisdiction over a 10b–5 claim. The district court granted the motion, and Milton appealed.

■ In determining whether intrastate telephone calls may confer federal jurisdiction under § 10 of the Securities Exchange Act, we are of course dealing exclusively with a question of Congressional intent, not Congressional power. It is well-established that Congress may regulate intrastate activity when necessary for the protection of interstate commerce. Weiss v. United States, 1939, 308 U.S. 321, 327, 60 S.Ct. 269, 84 L.Ed. 298. Indeed, none of the cases which have considered the issue before us have suggested that Congress lacked the ability to reach the activities in question here.

■ The starting point in a search for legislative intent is of course the pertinent statutory language. The jurisdictional phrase at issue here requires "the use of any means or instrumentality *of* interstate commerce." (Emphasis added). This wording is opposed to language often found in the Securities Act of 1933, which requires as a jurisdictional prerequisite the "use of any means or instruments of transportation or communication *in* interstate commerce." (Emphasis added). See, e. g., 15 U.S.C.A. §§ 77e, 77*l*, 77q. While there is nothing in the legislative history to indicate the reasoning, if any, behind this use of varying phraseology, a number of courts

---

1. The consideration ultimately paid for Milton's 47% interest was $10,000 plus an agreement to assume any liability arising from Milton's personal endorsement of certain corporate notes.

have considered use of the preposition "of" rather than "in" in itself highly persuasive that intrastate telephone communications are within the purview of the 1934 Act. See, *e. g.*, Aquionics Acceptance Corp. v. Kollar, 6 Cir. 1974, 503 F.2d 1225; Heyman v. Heyman, S.D.N. Y.1973, 356 F.Supp. 958.

■ This is certainly a permissible interpretation of the phrase, and other recognized indicia of legislative intent convince us it is the correct one. Most persuasive is the well-known canon of construction that statutes should be interpreted in harmony with their dominant purpose. Kokoszka v. Belford, 1974, 417 U.S. 642, 650–51, 94 S.Ct. 2431, 41 L.Ed.2d 374; F. T. C. v. Fred Meyer, Inc., 1968, 390 U.S. 341, 349, 88 S.Ct. 904, 19 L.Ed.2d 1222.

■ The primary thrust of the Securities Exchange Act is of course clear. It and its companion acts embrace

[a] fundamental purpose . . . to substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of ethics in the securities industry.[2]

S.E.C. v. Capital Research Bureau, 1963, 375 U.S. 180, 186, 84 S.Ct. 275, 280, 11 L.Ed.2d 237.

■ To accomplish these broad antifraud objectives, the Supreme Court has repeatedly held that the Act must be construed "flexibly, not technically and restrictively." Superintendent of Insurance v. Bankers Life & Casualty Co., 1971, 404 U.S. 6, 12, 92 S.Ct. 165, 30 L.Ed.2d 128. In response, this Court has also frequently given Rule 10b–5 a generous and hospitable reading. As we noted in Herpich v. Wallace, 5 Cir. 1970, 430 F.2d 792, 802:

The operative terms of Rule 10b–5— "fraud," "deceit," "purchase," "sale," and "security," as well as the phrase "in connection with"—are infused with special meanings. Their construction, the Supreme Court has admonished, must be broad and flexible so that the remedial purposes of the section and the rule will be effectuated. Tcherepnin v. Knight, 389 U.S. 332, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967); SEC v. Capital Gains Research Bur., 375 U.S. 180, 84 S.Ct. 275, 11 L.Ed.2d 237 (1963).

■ Appellee has not advanced, nor do we perceive, any reasoned justification for treating the Rule's jurisdictional phrase, "use of any means or instrumentality of interstate commerce," in a different manner. Indeed, it seems somewhat anomalous to assume, in the absence of express indication of such an intent, that on the one hand, Congress and the S.E.C. meant to erect a comprehensive statutory scheme for the prevention of securities fraud, and on the other, intended to narrowly circumscribe its scope of operation. Therefore, we align ourselves with the great majority of courts which have considered this issue,[3]

---

**2.** The "securities industry" encompasses more than the organized securities market.

[W]e read § 10(b) to mean that Congress meant to bar deceptive devices and contrivances in the purchase or sale of securities whether conducted in the organized markets or face to face.

Superintendent of Insurance v. Bankers Life and Casualty Co., 1971, 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128.

**3.** Aquionics Acceptance Corp. v. Kollar, 6 Cir. 1974, 503 F.2d 1225; Kerbs v. Fall River Industries, Inc., 10 Cir. 1974, 502 F.2d 731; Myzel v. Fields, 8 Cir. 1967, 386 F.2d 718, cert. denied 1968, 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143; Starck v. Dewane, N.D.Ill.

1973, 364 F.Supp. 466; Heyman v. Heyman, S.D.N.Y.1973, 356 F.Supp. 958; S.E.C. v. Crofters, Inc., S.D.Ohio 1972, 351 F.Supp. 236; Reube v. Pharmacodynamics, Inc., E.D. Pa.1972, 348 F.Supp. 900; Levin v. Marder, W.D.Pa.1972, 343 F.Supp. 1050; Childs v. RIC Group, Inc., N.D.Ga.1970, 331 F.Supp. 1078, aff'd per curiam, 5 Cir. 1971, 447 F.2d 1407; Ingraffia v. Belle Meade Hospital, E.D. La.1970, 319 F.Supp. 537; Bredehoeft v. Cornell, D.Or.1966, 260 F.Supp. 557; Lennerth v. Mendenhall, N.D.Ohio 1964, 234 F.Supp. 59; Nemitz v. Cunny, N.D.Ill.1963, 221 F.Supp. 571. *Contra,* Burke v. Triple A. Machine Shop, Inc., 9 Cir. 1971, 438 F.2d 978; Arber v. Essex Wire Corp., N.D.Ohio 1971, 342 F.Supp. 1162; Rosen v. Albern Color Research, E.D.Pa.1963, 218 F.Supp. 473.

and hold that intrastate use of the telephone may confer federal jurisdiction over a private action alleging violation of § 10 of the Securities Exchange Act of 1934 and S.E.C. Rule 10b–5.[4]

Reversed and remanded.

---

**4.** Our holding today should not be taken to infer that use of any instrumentality related to interstate commerce is sufficient to confer 10b–5 jurisdiction. As we also noted in Herpich v. Wallace, *supra*:

In this area especially, . . . a case-by-case approach is necessary to the proper development of controlling precedent.
430 F.2d at 802.