James J. SPILKER, Plaintiff-Appellant,

v.

SHAYNE LABORATORIES, INC., a corporation, et al., Defendants-Appellees.

No. 74–2400.

United States Court of Appeals, Ninth Circuit.

July 10, 1975.

John P. Cerney (argued), Quantz & Cerney, San Francisco, Cal., for plaintiff-appellant.

Hugh L. Smith, Jr. (argued), San Mateo, Cal., David B. Gaw (argued) of Jones, Gaw & Van Male, Napa, Cal., for defendants-appellees.

Before TUTTLE,* BROWNING and HUFSTEDLER, Circuit Judges.

TUTTLE, Circuit Judge:

The only issue in this appeal is a simple question of law: Does the fact that the defendants made two *intrastate* telephone calls connected to a securities transaction satisfy the jurisdictional requirement of "use of any means or instrumentality of interstate commerce" in § 10 of the Securities Exchange Act of 1934, 15 U.S.C. § 78j, and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. 240.10b–5? The trial court, apparently relying on this Court's brief *per curiam* opinion in *Burke v. Triple A. Machine Shop, Inc.*, 438 F.2d 978 (9th Cir. 1971), held that it did not, and dismissed the plaintiff's suit. We reverse and remand for further proceedings.

I.

Defendant Shayne Laboratories, Inc. is a Nevada Corporation. On June 12, 1970, a public stock offering was made on behalf of Shayne pursuant to Regulation A of the Securities and Exchange Act of 1933 of 55,000 shares of voting common stock at a price of $5 per share. Defendant Barton was hired by Shayne to supervise the sale of the balance of stock that had not been sold as of December, 1970. Defendant Feldmeier was a registered stock broker in San Francisco, and plaintiff Spilker was one of his customers.

On March 11, 1971, which was the last day that the Shayne stock could be sold pursuant to the offering, Feldmeier called Spilker at his home and recommended that he buy some of the Shayne stock. Later that same day, Barton also called Spilker at his home to arrange a meeting. The calls to Spilker by Barton and Feldmeier were both local San Francisco calls.

During their meeting at Spilker's house, Barton told Spilker that it was the last day that the stock could be sold for $5 per share, that he would have to pay for the stock immediately, that Shayne had shown a loss of 62 cents per share in 1970 but showed a net profit for 1971 thus far, and that he expected the price of the stock to rise so that it "would never see $5 again." Barton did not show Spilker any of the written materials on Shayne that he had prepared in a supervisory capacity. Shayne was in the business of selling wigs, and Barton told Spilker that Shayne had an exclusive source of material for the wigs not available to any other firm in the business. Spilker then bought 2,000 shares of Shayne stock, giving his check of $10,000 to Barton.

II.

Among the grounds of Spilker's complaint were that when Spilker purchased the stock from Barton, the Shayne shares were *already* being traded over-the-counter, but that Barton did not advise Spilker of the fact, and that shortly after the purchase of stock by Spilker, Barton gave Feldmeier $1,000 in cash but that Spilker was unaware of the payment to Feldmeier and was never advised that Feldmeier would benefit in any way from selling Spilker the stock.

By stipulation of the parties, trial was held before a magistrate who made his findings of fact and conclusions of law that were later adopted by the trial court. The court concluded on the basis of *Burke* that it had no jurisdiction to entertain the plaintiff's claim, and made no decision on the merits in dismissing the suit.

"In determining whether intrastate telephone calls may confer federal jurisdiction under § 10 of the Securities Exchange Act, we are of course dealing exclusively with a question of a Congressional intent, not Congressional power. It is well-established that

* Honorable Elbert P. Tuttle, United States Circuit Judge for the Fifth Circuit, sitting by designation.

Congress may regulate intrastate activity when necessary for the protection of interstate commerce. *Weiss v. United States,* 1939, 308 U.S. 321, 327, 60 S.Ct. 269, 84 L.Ed. 298. Indeed, none of the cases which have considered the issue before us has suggested that Congress lacked the ability to reach the activities in question here."

*Dupuy v. Dupuy,* 511 F.2d 641, 642 (5th Cir. 1975).

The defendant contends on appeal, as the trial court apparently assumed, that our opinion in *Burke* held as a matter of law that Congress did not intend for the Securities and Exchange Act of 1934 to reach purely *intra* state activities relating to the sale of securities. We do not read *Burke* so broadly. There is no indication in *Burke* that the two local telephone calls in that case were part of the stock transaction in question, and thus it could not be said that an instrumentality of interstate commerce was used "in connection with the purchase . . . of any security" within the meaning of the Act. Thus, all *Burke* stands for is the proposition that the jurisdictional requirement of the Securities and Exchange Act of 1934 is not satisfied where the use of "any means or instrumentality of interstate commerce, or of the mails" is not connected to the transaction in question.

The question then remains whether the jurisdictional requirement is satisfied when intrastate telephone calls are connected to the transaction.

"The starting point in a search for legislative intent is of course the pertinent statutory language. The jurisdictional phrase at issue here requires 'the use of any means or instrumentality *of* interstate commerce.' (Emphasis added). This wording is opposed to language often found in the Securities Act of 1933, which requires as a jurisdictional prerequisite the 'use of any means or instruments of transportation or communication *in* interstate commerce.' (Emphasis added). *See, e. g.,* 15 U.S.C.A. §§ 77e, 77*l,* 77q. While there is nothing in the legislative his-

tory to indicate the reasoning, if any, behind this use of varying phraseology, a number of courts have considered use of the preposition 'of' rather than 'in' in itself highly persuasive that intrastate telephone communications are within the purview of the 1934 Act. *See, e. g., Aquionics Acceptance Corp. v. Kollar,* 6 Cir. 1974, 503 F.2d 1225; *Heyman v. Heyman,* S.D.N.Y.1973, 356 F.Supp. 958."

*Dupuy v. Dupuy, supra,* at 642–643.

 Such an interpretation rests not merely on semantics, but on sound principles of statutory interpretation. It is a cardinal canon of statutory construction that statutes should be interpreted harmoniously with their dominant legislative purpose. *See, e. g., Kokoszka v. Belford,* 417 U.S. 642, 650–51, 94 S.Ct. 2431, 41 L.Ed.2d 374 (1974); *F. T. C. v. Fred Meyer, Inc.,* 390 U.S. 341, 349, 88 S.Ct. 904, 19 L.Ed.2d 1222 (1968). The purpose of the Securities Exchange Act is clear and unambiguous:

"To substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry."

*S. E. C. v. Capital Research Bureau,* 375 U.S. 180, 186, 84 S.Ct. 275, 280, 11 L.Ed.2d 237 (1963). The scope of the legislation is broad, and § 10(b) is "meant to bar deceptive devices and contrivances in the purchase or sale of securities whether conducted in the organized markets or face to face." *Superintendent of Insurance v. Bankers Life & Casualty Co.,* 404 U.S. 6, 12, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971).

 In order to fulfill this Congressional purpose, the Supreme Court has repeatedly held that the Act must be construed "flexibly, not technically and restrictively." *Superintendent of Insurance v. Bankers Life & Casualty Co., supra,* at 12, 92 S.Ct. 165. Thus, Rule 10b–5 merits a "generous and hospitable reading." *Dupuy v. Dupuy, supra,* at 643. The bark of the Act would be without substantially effective bite if we construed "instrumentality of interstate

commerce" in the narrow and highly technical fashion that the defendants urge.

> "Indeed, it seems somewhat anomalous to assume, in the absence of express indication of such an intent, that on the one hand, Congress and the S.E.C. meant to erect a comprehensive statutory scheme for the prevention of securities fraud, and on the other, intended to narrowly circumscribe its scope of operation."

*Dupuy v. Dupuy, supra,* at 643. Therefore, we join the Fifth, Sixth, Eighth, and Tenth Circuits holding expressly that the intrastate use of the telephone confers federal jurisdiction under § 10 of the Securities Exchange Act of 1934, and S.E.C. Rule 10b–5 where the telephone calls in question are connected to the transaction of which there is complaint. *Dupuy v. Dupuy, supra; Aquionics Acceptance Corp. v. Kollar, supra; Myzel v. Fields,* 386 F.2d 718 (8th Cir. 1967) *cert. denied* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968); *Kerbs v. Fall River Industries, Inc.* 502 F.2d 731 (10th Cir. 1974). *See also Starck v. Dewane,* 364 F.Supp. 466 (N.D.Ill.1973); *Heyman v. Heyman, supra; S. E. C. v. Crofters, Inc.,* 351 F.Supp. 236 (S.D.Ohio 1972); *Reube v. Pharmacodynamics, Inc.,* 348 F.Supp. 900 (E.D.Pa.1972); *Levin v. Marder,* 343 F.Supp. 1050 (W.D.Pa.1972); *Childs v. R. I. C. Group, Inc.,* 331 F.Supp. 1078 (N.D.Ga.1970), *aff'd per curiam,* 447 F.2d 1407 (5th Cir. 1971); *Ingraffia v. Belle Meade Hospital,* 319 F.Supp. 537 (E.D.La.1970); *Bredehoeft v. Cornell,* 260 F.Supp. 557 (D.Or.1966); *Lennerth v. Mendenhall,* 234 F.Supp. 59 (N.D.Ohio 1964); *Nemitz v. Cunny,* 221 F.Supp. 571 (N.D.Ill.1963).[1]

The judgment of the trial court dismissing the plaintiff's suit for want of jurisdiction is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

---

1. Only two courts have reached contrary conclusions. *Arber v. Essex Wire Corp.,* 342 F.Supp. 1162 (N.D.Ohio 1971); *Rosen v. Al-* *bern Color Research,* 218 F.Supp. 473 (E.D.Pa. 1963).