Elizabeth HARRISON, Margaret Witkop and Lucille O'Rourke, Plaintiffs,

v.

The EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, a New York Corporation, Frederick Scott, Kenneth Scholten, Melvin King and George DeVries, Defendants.

No. G75–437 C.A.

United States District Court, W. D. Michigan, S. D.

Aug. 8, 1977.

Burr, VanHattum & Hickman, Grand Rapids, Mich., for plaintiffs; Walter L. Harrison, Grand Rapids, Mich., of counsel.

Roach, Twohey, Maggini & Brady, Grand Rapids, Mich., for defendant Scott; Edward L. Twohey, Grand Rapids, Mich., of counsel.

Donald R. Worsfold, Grand Rapids, Mich., for defendants Scholten and DeVries.

## OPINION

FOX, Chief Judge.

### I.

Plaintiffs Elizabeth Harrison, Margaret Witkop, and Lucille O'Rourke bring this action under 15 U.S.C. § 78j(b), a provision of what is commonly known as the Securities Exchange Act of 1934. Specifically, plaintiffs allege a Rule 10b–5 violation (SEC rules; also 17 C.F.R. § 240.10b–5), involving a fraudulent sale of securities. Jurisdiction is claimed under 15 U.S.C. § 78aa.

The complaint is very poorly drawn, but basically it sets out these facts. Plaintiffs are widows whose husbands were insured through a group plan with Equitable Life Assurance Society of the United States. Scott was an agent of Equitable who contacted these plaintiffs shortly after their husbands died. It is alleged that Scott then induced plaintiffs to purchase securities in one Poly Company, through an arrangement whereby they would also purchase life insurance or retirement income policies from Scott, and the premiums for these policies would be paid from the interest accrued on the securities. It is not clear from the complaint whether plaintiffs used the benefits from their husbands' policies to purchase the securities. It is alleged that

Scott represented these securities to be a sound investment, when in fact they were not. Additionally, it is claimed that Scott had a financial interest in Poly Co., that Scott used his influence over plaintiffs and their reliance on his judgment to induce them to purchase these securities, that he failed to disclose material adverse information concerning the securities at the time of sale, and that the Poly Co. has subsequently gone bankrupt. Plaintiff Harrison claims damages of $12,000; plaintiff O'Rourke claims damages of $6,172.79; and plaintiff Witkop claims damages of $4,000. Additionally, each claims punitive damages of $100,000.

The above allegations comprise Count I. Count II is a negligence action against Equitable Life for failing to properly supervise its agents. Count III is an action against all defendants based on violation of the Michigan "Blue Sky Law," these securities allegedly not being registered with the State of Michigan. No claim of pendent jurisdiction is mentioned in the complaint, however. Count IV is confusing. It appears to be a rerun of Count I with the additional allegation that the violation of the Michigan "Blue Sky" law constitutes another separate deceptive device or contrivance in violation of Rule 10b–5. Count V is also confusing. It is not a separate action, but rather alleges that the Poly Co. never had a separate corporate existence, and thus this court should pierce the corporate guise, to hold the officers of Poly Co., those being Scott, Scholten, King and DeVries, personally liable for the debts of (and presumably claims against) the company. Count VI is an action against Equitable Life for restitution of all money paid by the plaintiffs on the insurance policies bought along with the securities, on a theory of unjust enrichment.

Defendants offer four grounds for dismissal of the case for lack of jurisdiction: (1) There is no means or instrumentality of interstate commerce or of the mails involved, as is required by 15 U.S.C. § 78j; (2) there is no federal question involved; (3) there does not exist any diversity between the parties; (4) the amount in controversy does not meet the jurisdictional minimum of over $10,000. For the reasons discussed, below, defendants' motion to dismiss is denied.

## II.

The court begins this opinion by noting that service was never returned upon the Equitable Life Assurance Society or upon Melvin King. Thus Counts II and VI are inapplicable to this action, as are those portions of the remaining counts pertaining to these two named defendants.

■ Plaintiffs, allege jurisdiction under 15 U.S.C. § 78aa. This jurisdictional grant authorizes actions arising out of 15 U.S.C. § 78j(b) to be heard in federal court. Since there is no requirement of diversity or jurisdictional amount contained in 15 U.S.C. § 78aa, nor do plaintiffs allege jurisdiction under 28 U.S.C. § 1331 or § 1332, defendants' objections in this regard are inapposite.

■ Likewise the claim that the Michigan "Blue Sky" law does not involve a federal question does not mandate dismissal here. An independent federal question has been raised under § 78j(b). The state "Blue Sky" law question may at this court's discretion be taken up along with the federal question, because it appears that both questions arise from a common nucleus of operative fact. Because such pendent jurisdiction was not pleaded, as is required by the Federal Rules of Civil Procedure, Rule 8(a)(1), the court grants plaintiffs permission to amend their complaint in this regard so as to comply with the Federal Rules.

The one substantive objection raised by defendants Scholten and DeVries is that plaintiffs have not alleged facts which permit this court to maintain jurisdiction over this action under 15 U.S.C. § 78j(b). Specifically, they allege that no instrumentality of interstate commerce was used in the transaction involving these securities, as is required by statute. However, defendants cannot prevail on this argument.

15 U.S.C. § 78j(b) and regulation 10b–5 promulgated therein read as follows:

*§ 78j. Manipulative and deceptive devices*

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Rule 10b–5 (17 C.F.R. § 240.10b–5) provides that—

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange,

(1) To employ any device, scheme, or artifice to defraud;

(2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or

(3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

in connection with the purchase or sale of any security.

Defendants do not dispute the fact that there was a sale of securities in this case, this being one element of § 78j(b) and Rule 10b–5.

Defendants do claim that no officer of Poly Co. ever directly or indirectly used any means or instrumentality of interstate commerce in the sale of these securities. However, plaintiffs in their complaint specifically allege such use of interstate instrumentalities by defendant Scott when he arranged appointments to complete the sale of these securities (plaintiffs' complaint, ¶ 11).

■ Rule 10b–5 specifically includes "indirect" use of the instrumentality of interstate commerce in connection with a manipulative or deceptive device or contrivance; thus it has been clearly established that the fraud or misrepresentation need not be communicated over the telephone or through the mails for there to still be a violation of the statute, *Aquionics Acceptance Corp. v. Kollar,* 503 F.2d 1225 (6th Cir. 1974); *Boone v. Baugh,* 308 F.2d 711 (8th Cir. 1962); *Starck v. Dewane,* 364 F.Supp. 466 (N.D.Ill.1973); *Levin v. Marder,* 343 F.Supp. 1050 (W.D.Pa.1972); *Reube v. Pharmacodynamics, Inc.,* 348 F.Supp. 900 (E.D.Pa.1972); *Nemitz v. Cunny,* 221 F.Supp. 571 (N.D.Ill.1963). There must be some connection between the communication and the fraud, however. Here the communication was to set up a meeting to complete the transaction, where the alleged fraud took place. Similar communications have been held to be under the statute. *Aquionics Acceptance Corp.; Starck; Nemitz,* supra.

■ A second question which may arise is whether this communication, being intrastate, falls within the interstate instrumentality required by the statute. Although there had been some dispute, the majority of the courts passing on the question now have ruled that the use of a telephone constitutes an interstate communication. Even though a call is intrastate, the *nature* of the telephone remains as an interstate instrumentality. *See Myzel v. Fields,* 386 F.2d 718 (8th Cir. 1967), *cert. denied,* 390 U.S. 951, 88 S.Ct. 1043, 19 L.Ed.2d 1143 (1968); *Lawrence v. S.E.C.,* 398 F.2d 267 (1st Cir. 1968); *Kerbs v. Fall River Industries, Inc.,* 502 F.2d 731 (10th Cir. 1974); *Dupuy v. Dupuy,* 511 F.2d 641 (5th Cir. 1973); *Spilker v. Shayne Laboratories,* 520 F.2d 523 (9th Cir. 1975). The Sixth Circuit adopted this interpretation in *Aquionics Acceptance Corp. v. Kollar,* supra, stating: "it is settled that Congress may regulate intrastate ac-

tivities which have an appreciable effect on interstate commerce. . . ." 503 F.2d at 1228.

The same arguments would clearly also apply to intrastate use of the mails. It is not clear from plaintiffs' complaint what type of communication was involved here. The principle would be the same for either telephone or mail, however.

■ One last question which could possibly arise is whether 15 U.S.C. § 78j(b) would apply to private transactions not conducted through organized securities markets. It does; *see Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972) (by implication); *Supt. of Insurance v. Bankers Life & Cas.,* 404 U.S. 6, 92 S.Ct. 162, 30 L.Ed.2d 128 (1971); *Leasco Data Processing Equip. Corp. v. Maxwell,* 468 F.2d 1326 (2nd Cir. 1972); *Radiation Dynamics, Inc. v. Goldmuntz,* 464 F.2d 876 (2nd Cir. 1972).

■ The standard of review applicable to a motion to dismiss is that the complaint must be construed in the light most favorable to the plaintiffs, and its allegations viewed by the court as being true, *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969); 5 Wright & Miller, *Federal Practice & Procedure,* § 1357. Under this standard, it is clear that plaintiffs have stated a sufficient basis of jurisdiction, as is required by F.R.Civ.P. Rule 12(b)(1), for this court to proceed to hear the action. Even though these defendants themselves have not utilized such interstate communications to perpetuate a securities fraud, plaintiffs allege that these defendants acted in concert with one, defendant Scott, who allegedly did so. Hence all participants are properly under the aegis of this court, and the motion to dismiss is denied.