**CUMBERLAND RECLAMATION COMPANY, Plaintiff–Appellant,**

v.

**SECRETARY, UNITED STATES DEPARTMENT OF the INTERIOR, Defendant–Appellee.**

No. 90–5189.

United States Court of Appeals, Sixth Circuit.

Argued Oct. 2, 1990.

Decided Feb. 12, 1991.

W. Patrick Hauser (argued), Barbourville, Ky., for plaintiff-appellant.

Bruce T. Hill, U.S. Dept. of Interior, Office of the Field Sol., Knoxville, Tenn., Robert L. Klarquist, Evelyn S. Ying (argued), U.S. Dept. of Justice, Land & Natural Resources Div., Washington, D.C., for defendant-appellee.

Before JONES, Circuit Judge, and ENGEL and WELLFORD *, Senior Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

The purpose of the Surface Mining Control and Reclamation Act of 1977 (SMCRA) is to reclaim and restore areas which have been harmed by coal mining. 30 U.S.C. § 1231(c)(1) (1988). This goal is accomplished by requiring coal mining operators to pay reclamation fees of 35 cents for every ton of coal produced by "surface coal mining" to the Secretary of the Interior. 30 U.S.C. § 1232(a) (1988). In this case, we must decide whether the dredging of the Cumberland River for the purpose of producing coal is "surface coal mining" under the SMCRA.

Plaintiff-appellant Cumberland Reclamation Company ("Cumberland") operates a dredging facility on the Cumberland River in Knox County, Kentucky. Cumberland has operated the facility since 1982 pursuant to permits issued by the Army Corps of Engineers. The facility consists of a floating barge equipped with a dredge pump. Water, coal, sand, and other solid waste is pumped up from the riverbed, and the coal is then separated from the other solid matter.

In April 1985, the director of the Lexington, Kentucky field office of the Office of Surface Mining Reclamation and Enforcement (OSMRE) informed Cumberland that it owed reclamation fees under the SMCRA. Cumberland then appealed to the U.S. Department of the Interior Board of Land Appeals (IBLA). On April 18, 1988, the IBLA affirmed the decision of the OSMRE. On appeal, the U.S. District Court for the Eastern District of Kentucky granted the Secretary of the Interior's motion for summary judgment, and affirmed the judgment of the IBLA. The district court also ordered Cumberland to pay $13,-338.45 in reclamation fees, plus interest and penalties. This appeal followed.

I

■ Interior Department regulations do not expressly authorize judicial review of IBLA decisions. 43 C.F.R. § 4.1280–86 (1989) (entitled "Appeals to the Board From Decisions of the Office of Surface Mining"). Our review, therefore, proceeds under the "substantial evidence" standard articulated in the Administrative Procedure Act, 5 U.S.C. § 706(2)(E) (1988). A decision is supported by substantial evidence if the

* The Honorable Harry W. Wellford assumed senior status January 21, 1991.

evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (citation omitted).

Cumberland first contends that it should not be required to tender the reclamation fees because underwater dredging is not "surface coal mining". The IBLA, in a 7–2 *en banc* decision, concluded that Cumberland's dredging operations were "surface coal mining" under the SMCRA, and therefore subject to the reclamation fee.[1] The IBLA declared that "[a]s a general rule, any dredging operation which recovers coal from a body of water is a surface mining operation under SMCRA and, as such, requires the payment of the appropriate reclamation fees." J.App. at 8.

Cumberland argues that its dredging operation does not constitute "surface coal mining" under the SMCRA. The Secretary, however, points to the broad definition of "surface coal mining operations" in the SMCRA: "activities conducted on the surface of lands in connection with a surface coal mine ... [and] the areas upon which such activities occur or where such activities disturb the natural land surface[.]" 30 U.S.C. § 1291(28). In addition, as the district court noted, the 1977 Senate Report specifically stated that dredging was one of the activities to be regulated under the SMCRA. S.Rep. No. 128, 95th Cong., 1st Sess. 98 (1977), U.S.Code Cong. & Admin.News 1977, 593.

The district court and the IBLA also relied on the only two cases to have considered this issue: *United States v. H.G.D. & J. Mining Co.*, 561 F.Supp. 315 (S.D.W. Va.1983), and *Brentwood, Inc.*, 90 I.D. 421 (I.B.L.A.1983). In *Brentwood*, the IBLA examined the legislative history of the SMCRA and found convincing evidence Congress intended river dredging for coal

to be treated as surface coal mining under the SMCRA. 90 I.D. at 424.

In *H.G.D. & J.*, the mining company argued that the dredging of coal from underneath a river did not constitute "coal mining operations" under the SMCRA because the Act only applies to *surface* mining. The court held that river dredging was clearly coal mining under the SMCRA because the dredging "was conducted at a place where, and upon a parcel of land from which, coal, a mineral, was found and extracted from the earth by excavating in the bed of the river, all of which was conducted from the earth's surface[.]" *Id.* at 322. In *H.G.D. & J.*, the district court stated that

> Obviously the [phrase "surface of the lands" in 30 U.S.C. § 1291(28) ] ... means the surface of the earth, including the waters thereon, in the areas described in those definitions, else all lands ... would be subject to the provisions of the act, but the waters within those boundaries would not be so subject, and the same would hold true as to the lands within any State. Such an absurd result could not have been intended, particularly since one of the purposes of the Act was to reclaim waterways despoiled by coal mining prior to the Act's effective date and prevent despoliation resulting therefrom after that date. The term "surface lands," as used in the Act, clearly means the surface of the earth, including the waters thereon, to distinguish "surface coal mining operations" from the underground ones. Thus, defendant's dredging operations were activities conducted on the surface of lands from whence defendant extracted coal.

561 F.Supp. at 322–23.

▪ Cumberland attempts to distinguish *H.G.D. & J.* by stressing that the mining company in that case made excavations into the natural river bottom. Cumberland emphasizes that its operation "does not penetrate into the natural river bottom but

---

**1.** The Surface Mining Control and Reclamation Act provides that "[a]ll operators of coal mining operations ... shall pay to the Secretary of the Interior, for deposit in the fund, a reclamation fee of 35 cents per ton of coal produced by surface coal mining[.]" 30 U.S.C. § 1232(a) (1988).

only vacuums sedimentary material which lies on the river bottom." Brief of Appellant at 5. In support of its position, Cumberland submitted the affidavit of a hydrologist who examined the dredging operation and concluded that the river bottom was not penetrated. As this affidavit was not part of the administrative record before the IBLA, however, it will not be considered by this court. *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1972) ("[T]he focal point for judicial review should be the administrative record already in existence, not some new record made initially in the reviewing court.").

■ In any event, we find that the distinction between a dredging operation that penetrates the riverbed, and a dredging operation that does not penetrate the riverbed, is without significance. This argument was rejected in *Brentwood*, 90 I.D. 421 (1983). *Brentwood* noted that the definition of "surface coal mining" in the SMCRA lists various types of mining "including such common methods as contour, strip, auger, mountaintop removal, box cut, open pit, and area mining[.]" 90 I.D. at 423 (quoting 30 U.S.C. § 1291(28)(A)). As a matter of statutory construction, the use of the word "including" indicates that Congress did not intend for the list to be exhaustive. Thus, "the absence of the word dredging from the list of excavation methods does not operate to place dredging activities outside the scope of the SMCRA." 90 I.D. at 423.

Since 1982, Cumberland has dredged more than 20,000 tons of coal from the bottom of the Cumberland River. The purpose of the SMCRA is to redress any deleterious environmental effects of Cumberland's long-term dredging of the riverbed. This purpose could be thwarted if the proposition that underwater dredging for coal is not covered by the SMCRA were accepted. Therefor, we find that dredging should be considered surface mining under the SMCRA.

II

■ Surface coal mining activities may be exempted from the SMCRA if either the two-acre exemption or the incidental mining exemption is determined to apply. The statutory basis of the two-acre exemption is section 528 of the SCMRA, codified at 30 U.S.C. § 1278(2), which states that the SCMRA does not apply to "the extraction of coal for commercial purposes where the surface mining operation affects two acres or less." [2] The incidental mining exemption stems from the definition of "surface coal mining operations" in 30 U.S.C. § 1291(28)(A), which provides that "such activities do not include the extraction of coal incidental to the extraction of other minerals where coal does not exceed 16⅔ per centum of the tonnage of minerals removed for purposes of commercial use or sale[.]" Cumberland argues that it should be entitled to either the two-acre exemption or the incidental-mining exemption.

In assessing Cumberland's arguments in regard to the claimed exemptions, the district court stated:

> In its pleadings before the IBLA, although it bore the burden of proof on entitlement to exemptions, Cumberland never substantiated its assertions, and the IBLA found for the government in a summary proceeding. The IBLA based its decision on the absence of any factual questions. The government presented uncontroverted evidence that Cumberland's operations covered more than two acres, and there was no evidence at all concerning the percentage of coal extracted.

J.App. at 143–44.

We find that the IBLA's determination that Cumberland's operations affected more than two acres was based on the substantial evidence. Cumberland also argues that it is entitled to the incidental mining exemption, and attempts to put forth an affidavit stating that sand production is 88% and coal production is 12%. Even ignoring the fact that this court must

---

2. The two-acre exemption was repealed in 1987. Pub.L. 100–34, Title II, 101 Stat. 300 (codified as amended at 30 U.S.C. § 1278 (1988)). The ex-

emption remains applicable to reclamation fees assessed before November 1987.

disregard the affidavit because it was not submitted to the IBLA, the affidavit fails to prove entitlement to the incidental mining exemption. To qualify, the IBLA emphasized that "the coal must constitute no more than 16⅔% of the mineral tonnage *removed for commercial use or sale.*" J.App. at 13. The affidavit only asserts that coal constitutes 12% of the *total* minerals removed. As the IBLA points out, it would be very easy for Cumberland to arrive at exact figures regarding the amount removed for commercial sale because it pays royalties to the lessor on all merchantable coal, sand, and gravel. *Id.* As the IBLA concluded, Cumberland's "reticence on this point speaks volumes." *Id.* Cumberland's reference to U.S. Geological Survey studies showing that the amount of coal in the Cumberland River is minimal also evades the issue of Cumberland's burden of proof. Thus, we conclude that Cumberland is not entitled to the incidental mining exemption.

### III

Cumberland's final argument is that the IBLA's summary decision without a fact-finding hearing denied it due process of law. Cumberland's argument is that the issue of the two exemptions is a factual matter which, because of the questions raised by its affidavits, can only be resolved by a hearing.

■ The IBLA's denial of Cumberland's request for a hearing was discretionary. 43 C.F.R. § 4.1286(b) (1989) ("The allowance of a request for a hearing is within the discretion of the Board[.]"). The request for a hearing was denied because the IBLA found that Cumberland's evidence failed to create an issue of material fact. In such a situation, the IBLA was authorized to grant a motion for summary decision under 43 C.F.R. § 4.1125(c). The district court concluded that "Cumberland did not substantiate its assertions by submitting facts to the IBLA, and thus the summary proceeding by IBLA was proper." Thus, we agree that the IBLA was not required to conduct a hearing because its conclusion that no issues of material fact

exist is supported by substantial evidence. Cumberland's due process rights were not violated when the IBLA exercised its discretion to deny a hearing.

### IV

For the foregoing reasons, the district court's grant of summary judgment in favor of the Secretary is AFFIRMED.

WELLFORD, Senior Circuit Judge, dissenting:

Paragraph 1232(a) of the Surface Mining Control Act deals with a reclamation fee for "surface coal mining" and another (lesser) fee for "underground mining." Section 1201(c) refers to surface mining operations and "disturbance of surface areas ... by destroying or diminishing the utility of land." Section 1202(e) discusses reclaiming of "surface areas" contemporaneously with "surface coal mining operations." In § 1291(28), "surface coal mining operations" are defined as

> activities conducted on the surface of lands in connection with a surface coal mine ... including such common methods as contour, strip, auger, mountaintop removal, box cut, open pit, and area mining. . . . *[P]rovided, however,* that such activities do not include the extraction of coal incidental to the extraction of other minerals.

We are concerned with whether Cumberland, which operated a dredging facility on the Cumberland River, was conducting "surface coal mining operations" in dredging the river bottom for coal, sand, and gravel under the meaning of the Act. The Act makes no mention of dredging on the water for coal. I agree with that portion of the opinion in *United States v. H.G.D. & J. Min. Co., Inc.,* 561 F.Supp. 315, 319 (S.D.W.Va.1983), which states that "the Act's provisions are indeed unambiguous."

Since we are construing an "unambiguous" statute, we must decide the applicability and interpretation of that statute *de novo.* Also, as stated in *H.G.D. & J. Min. Co.,* 561 F.Supp. at 319, in such a situation "our starting point for discerning congres-

sional intent is the language of the statute itself." (Citing *State Water Control Board v. Train*, 559 F.2d 921, 924–25 n. 20 (4th Cir.1977)). *See Diamond v. Chakrabarty*, 447 U.S. 303, 308, 100 S.Ct. 2204, 2207, 65 L.Ed.2d 144 (1980). We interpret the words used "taking their ordinary, contemporary, common meaning." *Perrin v. United States*, 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979) ("the sense in which it is used in everyday life"); *In re Great Western Petroleum Corp.*, 16 F.Supp. 247, 249 (S.D.Cal.1936), citing *United States v. Bhaget Singh Thind*, 261 U.S. 204, 43 S.Ct. 338, 67 L.Ed. 616 (1923). We do not serve as a rubber stamp for administrative determinations as to the meaning of a statute. *A.T.F. Bureau v. FLRA*, 464 U.S. 89, 104 S.Ct. 439, 78 L.Ed.2d 195 (1983).

The statutory language under consideration begins with the word, "surface." Webster defines this as "one or more of the faces of a three-dimensional thing: a plane of a solid < the uneven ˜of the earth> <on the ˜of the water > ... the outward appearance or characteristics of something." *Webster Third New International Dictionary*. This captures what is in my mind's eye in viewing "surface"—the appearance of the surface or outer plane of land or earth which is different from the surface of water.

Next, we look at the word, "mining," described as "the process or business of making or working mines."[3] *Webster, supra*. The statute is intended to protect from destruction or "diminishing the utility of land." § 1201(c). In turn, "land" is most commonly defined as "the solid part of the surface of the earth in contrast to the water." *Webster, supra* (*see* Genesis 1:9–11).

The definition in the statute of usual or common means or methods of "surface coal mining operations" all relate plainly to land operations, not dredging operations over water. Even if all the ways described in

§ 1291(28) are deemed illustrative and not inclusive, this additional language adds strong support to my view that "surface coal mining and reclamation operations" do not include dredging from the surface of water within the ordinary and usual meaning of terms and language employed in the statute. That "water" operations are not expressly excluded from the statute is of no great significance.

Only one court has considered this problem of statutory interpretation. *H.G.D. & J. Min. Co.* was decided by a district judge and important to that court's decision was its analogy of dredging operations to "placer mining," an analogy I find unpersuasive, being tied to the concept of "reclaimed coal" ("coal recovered from a deposit that is not in its original geological location." *Id.* at 324). The decision in *H.G.D. & J. Min. Co.*, moreover, was based upon stipulations that went into considerable detail not covered in the case in controversy. *Brentwood, Inc.*, 761 BLA 73 (1983), followed *H.G.D. & J. Min. Co.* and also relied upon the legislative history of the Act, rather than the plain, unambiguous language therein, as did the district court.

We do not look first to the legislative history. Instead, we apply the well known rule that statutory construction begins with the plain words of the statute. *In re Revco D.S., Inc.*, 898 F.2d 498, 500 (6th Cir.1990). Only if we determine the language of the statute is ambiguous do we turn to the legislative history. *United States v. Barry*, 888 F.2d 1092, 1093 (6th Cir.1989).

We are free to make our own reasonable and sensible construction of the Act even if we give some deference to the administrative agency. I would hold that surface mining operations do not include dredging over water. I would therefore reverse both the administrative and district court decisions for the reasons that they are "not in accordance with law." 5 U.S.C. § 706.

---

**3.** A "mining claim" is described as "a parcel of *land*, containing precious metal in its soil or rock." *Black's Law Dictionary* (5th ed.) (emphasis added). The precious mineral involved in this case, coal, needs no further definition—it is

not at issue here. Dredging, of course, is a "form of excavation conducted under water." *A Dictionary of Mining, Mineral & Related Terms* at 349 (Bur. of Mines, 1968).

In addition to this basic disagreement with the administrative interpretation of the statute approved by the district court, I would hold that the Interior Board of Land Appeals (IBLA) in this case erred to the serious detriment of Cumberland by denying it a hearing and an opportunity for it to demonstrate the nature of its operations and whether Cumberland actually penetrated the riverbed by its method of dredging operation. If Cumberland did not penetrate the earth below the river, as it contended by the affidavit of an expert, it is clearly distinguishable from the situation in *H.G.D. & J. Min. Co.* The denial of a hearing also limited Cumberland a fair opportunity to prove that production of coal amounted to less than one-sixth of its mineral production of sand, gravel and stone at the location, and also the two acre exemption. (30 U.S.C. § 1278(2)).

For the reasons stated, I would reverse the decision of the district court. In the alternative, under the circumstances, I would remand to the administrative hearing to enable Cumberland a fair opportunity to establish its claimed exceptions exemptions.